# STATE OF MICHIGAN

# COURT OF APPEALS

JANE DOE 1,

       Plaintiff-Appellant,

v

GEORGE CONRAD-SPENCER YOUNG, D.C.,
SOLOMON L. COGAN, D.C., HEALTH QUEST
OF ALGER COUNTY, PLC, and QUEST
HEALTH SYSTEMS III, PLLC, doing business as
HEALTH QUEST OF MUNISING,

       Defendants-Appellees,

and

QUEST SYSTEMS II PLLC, doing business as
HEALTH QUEST OF GRAND RAPIDS, QUEST
HEALTH SYSTEMS IV PLLC, doing business as
HEALTH QUEST OF COLON/BRONSON,
QUEST HEALTH SYSTEMS V PLLC, doing
business as HEALTH QUEST OF TRENTON,
QUEST HEALTH SYSTEMS VI PLLC, doing
business as HEALTH QUEST OF GRAND
BLANC/BURTON, QUEST HEALTH SYSTEMS
VII PLLC, doing business as HEALTH QUEST OF
SOUTHFIELD MICHIGAN, QUEST HEALTHY
SYSTEM VIII PLLC, doing business as HEALTH
QUEST OF ROCHESTER HILLS, QUEST
HEALTH SYSTEMS IX PLLC, doing business as
HEALTH QUEST OF TAYLOR, QUEST
HEALTH SYSTEMS X PLLC, doing business as
HEALTH QUEST LIVONIA/BACK NECK PN C,
QUEST HEALTH SYSTEMS XI PLLC, doing
business as HEALTH QUEST
TROY/DEARBORN/GOODRICH, and QUEST
HEALTH SYSTEMS XII PLLC, doing business as
HEALTH QUEST JENISON/TROY/OTISVILLE,

       Defendants.

UNPUBLISHED
January 23, 2018

No.  335089
Alger Circuit Court
LC No.  14-007390-NO

-1-

SHANNON WASHBURN,

       Plaintiff-Appellant,

v

GEORGE CONRAD-SPENCER YOUNG, D.C.,
GEORGE CONRAD-SPENCER YOUNG, D.C.,
SOLOMON L. COGAN, D.C., HEALTH QUEST
OF ALGER COUNTY, PLC, and QUEST
HEALTH SYSTEMS III, PLLC, doing business as
HEALTH QUEST OF MUNISING,

       Defendants-Appellees,
and

QUEST SYSTEMS II PLLC, doing business as
HEALTH QUEST OF GRAND RAPIDS, QUEST
HEALTH SYSTEMS IV PLLC, doing business as
HEALTH QUEST OF COLON/BRONSON,
QUEST HEALTH SYSTEMS V PLLC, doing
business as HEALTH QUEST OF TRENTON,
QUEST HEALTH SYSTEMS VI PLLC, doing
business as HEALTH QUEST OF GRAND
BLANC/BURTON, QUEST HEALTH SYSTEMS
VII PLLC, doing business as HEALTH QUEST OF
SOUTHFIELD MICHIGAN, QUEST HEALTHY
SYSTEM VIII PLLC, doing business as HEALTH
QUEST OF ROCHESTER HILLS, QUEST
HEALTH SYSTEMS IX PLLC, doing business as
HEALTH QUEST OF TAYLOR, QUEST
HEALTH SYSTEMS X PLLC, doing business as
HEALTH QUEST LIVONIA/BACK NECK PN C,
QUEST HEALTH SYSTEMS XI PLLC, doing
business as HEALTH QUEST
TROY/DEARBORN/GOODRICH, and QUEST
HEALTH SYSTEMS XII PLLC, doing business as
HEALTH QUEST JENISON/TROY/OTISVILLE

       Defendants.

No. 335104
Alger Circuit Court
LC No. 14-007388-NH

JENNIFER CARLSON,

Plaintiff-Appellant,

v

GEORGE CONRAD-SPENCER YOUNG, D.C.,
SOLOMON L. COGAN, D.C., HEALTH QUEST
OF ALGER COUNTY, PLC, and QUEST
HEALTH SYSTEMS III, PLLC, doing business as
HEALTH QUEST OF MUNISING,

Defendants-Appellees,

and

QUEST SYSTEMS II PLLC, doing business as
HEALTH QUEST OF GRAND RAPIDS, QUEST
HEALTH SYSTEMS IV PLLC, doing business as
HEALTH QUEST OF COLON/BRONSON,
QUEST HEALTH SYSTEMS V PLLC, doing
business as HEALTH QUEST OF TRENTON,
QUEST HEALTH SYSTEMS VI PLLC, doing
business as HEALTH QUEST OF GRAND
BLANC/BURTON, QUEST HEALTH SYSTEMS
VII PLLC, doing business as HEALTH QUEST OF
SOUTHFIELD MICHIGAN, QUEST HEALTHY
SYSTEM VIII PLLC, doing business as HEALTH
QUEST OF ROCHESTER HILLS, QUEST
HEALTH SYSTEMS IX PLLC, doing business as
HEALTH QUEST OF TAYLOR, QUEST
HEALTH SYSTEMS X PLLC, doing business as
HEALTH QUEST LIVONIA/BACK NECK PN C,
QUEST HEALTH SYSTEMS XI PLLC, doing
business as HEALTH QUEST
TROY/DEARBORN/GOODRICH, and QUEST
HEALTH SYSTEMS XII PLLC, doing business as
HEALTH QUEST JENISON/TROY/OTISVILLE

Defendants.

No. 335105
Alger Circuit Court
LC No. 14-007389-NH

MELISSA LUCKEY,

Plaintiff-Appellant,

v

No. 335106
Alger Circuit Court

-3-

GEORGE CONRAD-SPENCER YOUNG, D.C.,
SOLOMON L. COGAN, D.C., HEALTH QUEST
OF ALGER COUNTY, PLC, and QUEST
HEALTH SYSTEMS III, PLLC, doing business as
HEALTH QUEST OF MUNISING,
GEORGE CONRAD-SPENCER YOUNG, D.C.,

LC No.  14-007391-NH

        Defendants-Appellees,

and

QUEST SYSTEMS II PLLC, doing business as
HEALTH QUEST OF GRAND RAPIDS, QUEST
HEALTH SYSTEMS IV PLLC, doing business as
HEALTH QUEST OF COLON/BRONSON,
QUEST HEALTH SYSTEMS V PLLC, doing
business as HEALTH QUEST OF TRENTON,
QUEST HEALTH SYSTEMS VI PLLC, doing
business as HEALTH QUEST OF GRAND
BLANC/BURTON, QUEST HEALTH SYSTEMS
VII PLLC, doing business as HEALTH QUEST OF
SOUTHFIELD MICHIGAN, QUEST HEALTHY
SYSTEM VIII PLLC, doing business as HEALTH
QUEST OF ROCHESTER HILLS, QUEST
HEALTH SYSTEMS IX PLLC, doing business as
HEALTH QUEST OF TAYLOR, QUEST
HEALTH SYSTEMS X PLLC, doing business as
HEALTH QUEST LIVONIA/BACK NECK PN C,
QUEST HEALTH SYSTEMS XI PLLC, doing
business as HEALTH QUEST
TROY/DEARBORN/GOODRICH, and QUEST
HEALTH SYSTEMS XII PLLC, doing business as
HEALTH QUEST JENISON/TROY/OTISVILLE,

        Defendants.

JANE DOE 2,

        Plaintiff-Appellant,

v

GEORGE CONRAD-SPENCER YOUNG, D.C.,
SOLOMON L. COGAN, D.C., HEALTH QUEST
OF ALGER COUNTY, PLC, and QUEST
HEALTH SYSTEMS III, PLLC, doing business as

No.  335107
Alger Circuit Court
LC No.  14-007400-NH

HEALTH QUEST OF MUNISING,

Defendants-Appellees,

and

QUEST SYSTEMS II PLLC, doing business as HEALTH QUEST OF GRAND RAPIDS, QUEST HEALTH SYSTEMS IV PLLC, doing business as HEALTH QUEST OF COLON/BRONSON, QUEST HEALTH SYSTEMS V PLLC, doing business as HEALTH QUEST OF TRENTON, QUEST HEALTH SYSTEMS VI PLLC, doing business as HEALTH QUEST OF GRAND BLANC/BURTON, QUEST HEALTH SYSTEMS VII PLLC, doing business as HEALTH QUEST OF SOUTHFIELD MICHIGAN, QUEST HEALTHY SYSTEM VIII PLLC, doing business as HEALTH QUEST OF ROCHESTER HILLS, QUEST HEALTH SYSTEMS IX PLLC, doing business as HEALTH QUEST OF TAYLOR, QUEST HEALTH SYSTEMS X PLLC, doing business as HEALTH QUEST LIVONIA/BACK NECK PN C, QUEST HEALTH SYSTEMS XI PLLC, doing business as HEALTH QUEST TROY/DEARBORN/GOODRICH, and QUEST HEALTH SYSTEMS XII PLLC, doing business as HEALTH QUEST JENISON/TROY/OTISVILLE,

Defendants.

_____

JANE DOE 3,

Plaintiff-Appellant,

v                                                       No.  335108
                                                        Alger Circuit Court
GEORGE CONRAD-SPENCER YOUNG, D.C.,                      LC No.  14-007401-NH
SOLOMON L. COGAN, D.C., HEALTH QUEST
OF ALGER COUNTY, PLC, and QUEST
HEALTH SYSTEMS III, PLLC, doing business as
HEALTH QUEST OF MUNISING,

Defendants-Appellees,
and
_____

QUEST SYSTEMS II PLLC, doing business as
HEALTH QUEST OF GRAND RAPIDS, QUEST
HEALTH SYSTEMS IV PLLC, doing business as
HEALTH QUEST OF COLON/BRONSON,
QUEST HEALTH SYSTEMS V PLLC, doing
business as HEALTH QUEST OF TRENTON,
QUEST HEALTH SYSTEMS VI PLLC, doing
business as HEALTH QUEST OF GRAND
BLANC/BURTON, QUEST HEALTH SYSTEMS
VII PLLC, doing business as HEALTH QUEST
OF SOUTHFIELD MICHIGAN, QUEST
HEALTHY SYSTEM VIII PLLC, doing business
as HEALTH QUEST OF ROCHESTER HILLS,
QUEST HEALTH SYSTEMS IX PLLC, doing
business as HEALTH QUEST OF TAYLOR,
QUEST HEALTH SYSTEMS X PLLC, doing
business as HEALTH QUEST LIVONIA/BACK
NECK PN C, QUEST HEALTH SYSTEMS XI
PLLC, doing business as HEALTH QUEST
TROY/DEARBORN/GOODRICH, and QUEST
HEALTH SYSTEMS XII PLLC, doing business as
HEALTH QUEST JENISON/TROY/OTISVILLE,

Defendants.

JANE DOE 4 and JOHN DOE 1,

Plaintiff-Appellant,

v

GEORGE CONRAD-SPENCER YOUNG, D.C.,
SOLOMON L. COGAN, D.C., HEALTH QUEST
OF ALGER COUNTY, PLC, and QUEST
HEALTH SYSTEMS III, PLLC, doing business as
HEALTH QUEST OF MUNISING,

Defendants-Appellees,
and

QUEST SYSTEMS II PLLC, doing business as
HEALTH QUEST OF GRAND RAPIDS, QUEST
HEALTH SYSTEMS IV PLLC, doing business as
HEALTH QUEST OF COLON/BRONSON,

No.  335109
Alger Circuit Court
LC No.  14-007402-NH

-6-

QUEST HEALTH SYSTEMS V PLLC, doing
business as HEALTH QUEST OF TRENTON,
QUEST HEALTH SYSTEMS VI PLLC, doing
business as HEALTH QUEST OF GRAND
BLANC/BURTON, QUEST HEALTH SYSTEMS
VII PLLC, doing business as HEALTH QUEST
OF SOUTHFIELD MICHIGAN, QUEST
HEALTHY SYSTEM VIII PLLC, doing business
as HEALTH QUEST OF ROCHESTER HILLS,
QUEST HEALTH SYSTEMS IX PLLC, doing
business as HEALTH QUEST OF TAYLOR,
QUEST HEALTH SYSTEMS X PLLC, doing
business as HEALTH QUEST LIVONIA/BACK
NECK PN C, QUEST HEALTH SYSTEMS XI
PLLC, doing business as HEALTH QUEST
TROY/DEARBORN/GOODRICH, and QUEST
HEALTH SYSTEMS XII PLLC, doing business as
HEALTH QUEST JENISON/TROY/OTISVILLE,

   Defendants.

---

APRIL NAGELKIRK,

   Plaintiff-Appellant,

v

GEORGE CONRAD-SPENCER YOUNG, D.C.,
SOLOMON L. COGAN, D.C., HEALTH QUEST
OF ALGER COUNTY, PLC, and QUEST
HEALTH SYSTEMS III, PLLC, doing business as
HEALTH QUEST OF MUNISING,

   Defendants-Appellees,
and

QUEST SYSTEMS II PLLC, doing business as
HEALTH QUEST OF GRAND RAPIDS, QUEST
HEALTH SYSTEMS IV PLLC, doing business as
HEALTH QUEST OF COLON/BRONSON,
QUEST HEALTH SYSTEMS V PLLC, doing
business as HEALTH QUEST OF TRENTON,
QUEST HEALTH SYSTEMS VI PLLC, doing
business as HEALTH QUEST OF GRAND
BLANC/BURTON, QUEST HEALTH SYSTEMS

No. 335110
Alger Circuit Court
LC No. 14-007462-NH

-7-

VII PLLC, doing business as HEALTH QUEST
OF SOUTHFIELD MICHIGAN, QUEST
HEALTHY SYSTEM VIII PLLC, doing business
as HEALTH QUEST OF ROCHESTER HILLS,
QUEST HEALTH SYSTEMS IX PLLC, doing
business as HEALTH QUEST OF TAYLOR,
QUEST HEALTH SYSTEMS X PLLC, doing
business as HEALTH QUEST LIVONIA/BACK
NECK PN C, QUEST HEALTH SYSTEMS XI
PLLC, doing business as HEALTH QUEST
TROY/DEARBORN/GOODRICH, and QUEST
HEALTH SYSTEMS XII PLLC, doing business as
HEALTH QUEST JENISON/TROY/OTISVILLE,

                Defendants.

---

Before:  O'CONNELL, P.J., and BECKERING and STEPHENS, JJ.

PER CURIAM.

Plaintiffs, Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jennifer Carlson, Melissa Luckey, April Nagelkirk, and Shannon Washburn, appeal by leave granted[1] the trial court's summary disposition of their actions against defendants Health Quest of Alger County, PLC, and Quest Health Systems III, PLLC, doing business as Health Quest of Munising (collectively, "Health Quest") and Solomon L Cogan, D.C., under MCR 2.116(C)(10) (no genuine issue of material fact, and moving party entitled to judgment as a matter of law).[2]  For the reasons stated below, we affirm.

---

[1] *Jane Doe 1 v George Conrad-Spencer Young, D.C.,* unpublished orders of the Court of Appeals, entered March 14, 2017 (Docket Nos. 335089; 335104; 335105; 335106; 335107; 335108; 335109; 335110).  By the same order, the Court consolidated the cases on its own motion pursuant to MCR 7.216(A)(7).

[2] The parties stipulated to the dismissal of all other defendants except George Conrad-Spencer Young, D.C. on March 13, 2015.  Young was found in default on June 29, 2015.  The parties indicated at oral argument that the determination of an award of damages against Young has not yet occurred.  Because Young is not a party to this appeal, "defendants" refers to Health Quest and Cogan only.

# I. STATEMENT OF PERTINENT FACTS

The eight plaintiffs in these consolidated cases were patients of defendant George Conrad-Spencer Young, D.C., at defendant Health Quest of Munising, a chiropractic clinic owned by defendant Cogan. Three of the plaintiffs were also employees of the clinic. In October 2011, Young began working at Health Quest of Munising.[3] Plaintiffs allege that in 2012, Young sexually molested them when he administered chiropractic treatment. Specifically, they claim that he touched them inappropriately under the guise of treating them for displaced ribs. None of the plaintiffs complained to clinic staff or to Cogan about the inappropriate touching; most of them did not know at the time that Young's treatment was medically unnecessary or his conduct inappropriate.

Young's misconduct began to come to light on November 26, 2012, when he made sexual remarks to plaintiff Washburn during treatment. According to Washburn's deposition testimony, Young pulled her off the table, held her in his arms, and then kissed her. Washburn told Young "No," and demanded that he let her go. When Young finally let her go, she left the building without speaking to anyone. She went to the police the same day and reported what happened.

On December 13, 2012, a prosecutor from the Munising prosecutor's office contacted Health Quest's corporate counsel and informed him that Young had been arrested and charged with assault. Cogan received a call about the matter the same day. Cogan testified at deposition that this was the first notice he had about any criminal matters related to Young. Cogan immediately suspended Young from seeing patients and arranged for a substitute doctor. Young was sent to another clinic to do paperwork while defendants conducted an investigation. On December 27, 2012, after the investigation, Young was officially terminated.

Washburn later realized that Young had touched her inappropriately during his prior treatments of her.[4] Because of a police investigation, word-of-mouth between other patients, and a public letter from Cogan on behalf of Health Quest that was published in the newspaper in January 2013, the eight plaintiffs in these cases came forward with similar reports of Young

---

[3] He had been a licensed chiropractor since 2003.

[4] Young pleaded guilty to the November 26, 2012 assault against Washburn. At his sentencing, Washburn and her mother, Doe 3, asked the prosecutor why Young was not charged with a sexual assault. According to them, the prosecutor explained that Young's conduct was not sexual because there was no touching of the breasts or genitals. Washburn then told the prosecutor that Young had touched her breasts every time during his chiropractic treatments. Doe 3 said she had witnessed the touching and was touched in that manner herself by Young. Washburn testified at deposition that Young had explained to her and her mother that doing so was a necessary part of the treatment process. Until that point, they did not believe anything was inappropriate about Young touching their breasts during treatment. Washburn testified that when talking to the prosecutor, "that's when it came out, like that's when it dawned on me and [Doe 3]" that Young's conduct was totally inappropriate.

touching them in a sexual manner during treatment. Young was charged with criminal sexual conduct; a jury found him guilty of seven counts of fourth-degree criminal sexual conduct, MCL 750.520e(1)(a) (force or coercion), and the trial court sentenced him to a period of imprisonment.

In 2014, plaintiffs brought actions against Young for negligence and defendants for negligence and vicarious liability. Plaintiffs alleged that defendants were negligent in hiring, retaining, and failing to properly supervise Young, and that Health Quest and its parent entities are vicariously liable for the actions of Young because he was their employee. Plaintiffs also alleged violations of the Elliot-Larsen Civil Rights Act (CRA), MCL 37.2101 *et seq*. The employee-plaintiffs alleged sexual harassment based on a hostile work environment, and all plaintiffs alleged discrimination in public accommodations or services based on gender.

Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10). They argued that plaintiffs failed to state a claim for vicarious liability, because as a matter of law, Young's sexual misconduct occurred outside the scope of his employment. Defendants maintained that plaintiffs' negligent hiring and supervision claims fail because they cannot show that defendants did not adequately investigate Young upon hiring him or that defendants knew or should have known that he had a proclivity for sexual molestation. Defendants argued that plaintiffs' civil rights claims fail because, among other reasons, plaintiffs cannot show that defendants knew about the misconduct or establish the elements of respondeat superior. At the hearing on the motion, defendants argued that they knew nothing about Young's misconduct, and therefore had no duty to take action to prevent it. They further argued that regardless of Young's viewing of scantily clad women on his computer, and sexual remarks, under *Brown v Brown*, 478 Mich 545; 739 NW2d 313 (2007), these incidents did not make it foreseeable that Young would sexually molest patients. Defendants contended that in the absence of notice, they cannot be held vicariously liable. Cogan also emphasized that he was not Young's employer; he is an employee of Health Quest, and plaintiffs presented no evidence that he was negligent in hiring or retaining Young.

Plaintiffs argued that the question of the foreseeability of Young's conduct should be a question for the jury. They tried to distinguish *Brown* based on the nature of the work, maintaining that because Young's job involved working with women and placing his hands on women, defendants should have foreseen his propensity for sexually molesting his patients in light of his sexual comments at work. Plaintiffs also argued that defendants benefited financially from Young's treatment of them, and therefore should be held liable for his misconduct.

After hearing oral argument and taking the matter under advisement, the trial court issued a written opinion and order granting defendants' motions for summary disposition. The court ruled in relevant part that the record did not support the fact that defendants received "adequate or sufficient notice" of Young's misconduct or that his acts of sexual misconduct were foreseeable, and that plaintiffs failed to establish a genuine issue of material fact in support of their claims against Cogan and Health Quest.

## II. ANALYSIS

## A. STANDARD OF REVIEW

The Court reviews de novo a trial court's decision on a motion for summary disposition. *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001). The trial court granted summary disposition under MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the documentary evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the trial court may grant the motion. *Id*.; MCR 2.116(C)(10), (G)(4).

## B. NEGLIGENCE

Plaintiffs first contend that the trial court erred when it did not determine that Cogan had a duty to protect the female employees and patients of Health Quest because of the "special relationship" among the parties that arose when each of the plaintiffs entrusted herself to Young's chiropractic treatment at a clinic owned and under Cogan's supervision. We find no error in the trial court's dismissal of plaintiffs' claim against Cogan for negligent hiring, retention, and supervision.

Whether a duty exists is a question of law. *Hill v Sears, Roebuck and Co*, 492 Mich 651, 659; 822 NW2d 190 (2012). There can be no tort liability unless the defendant owed a duty to the plaintiff. *Id*. at 660. Although every person who engages in an undertaking "has a duty to use due care or to not unreasonably endanger the person or property of others[,]" there generally is "no duty that obligates one person to aid or protect another." *Id*. at 660-661 (quotation marks and citation omitted). A duty may arise "from a statute, contractual relationship, or by operation of law," as plaintiffs allege in this case. *Id*. at 661. Whether a duty arises by operation of common law involves consideration of several factors, including the relationship between the actor and the plaintiff, the social costs of imposing a duty, and the foreseeability of the harm. *Id*. Michigan's Supreme Court has recognized that,

> "[t]he most important factor to be considered [in this analysis] is the relationship of the parties" and also that there can be no duty imposed when the harm is not foreseeable. In other words, "[b]efore a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable." If either of these two factors is lacking, then it is unnecessary to consider any of the remaining factors. [*Id*., quoting *In re Certified Question*, 479 Mich 498, 505, 508; 740 NW2d 206 (2007).]

In the present case, the trial court concluded that liability could not be imposed where plaintiffs had offered no evidence establishing a material question of fact regarding whether

Cogan received notice of Young's misconduct or that such misconduct was foreseeable. This ruling is consistent with our Supreme Court's explanation in *Hill* that, "[b]efore a duty can be imposed, there must be a relationship between the parties *and* the harm must have been foreseeable." *Hill*, 492 Mich at 661 (quotation marks and citation omitted; emphasis added). Plaintiffs contend that Young's inappropriate comments to office staff and viewing of scantily clad women on the Internet in his office rendered his sexual misconduct foreseeable.

In *Brown v Brown*, 478 Mich 545, 547-548; 739 NW2d 313 (2007), our Supreme Court held that, absent a prior criminal record, history of violent behavior, or comments that convey "an unmistakable, particularized" threat of the specific misconduct at issue, an employer is not liable for its employee's criminal acts. *Brown* addressed the foreseeability of criminal conduct in an action brought by a plaintiff who had been sexually assaulted by one of the defendant-employer's employees. The plaintiff worked as a security guard at the defendant-employer's plant. One of the defendant's employees repeatedly made "very crude, offensive sexual remarks" to the plaintiff, who complained about the comments to a plant manager several times. *Id*. at 548-550. One night, as the plaintiff was making her nightly rounds through the plant, the employee forced her into a women's room and sexually assaulted her; the plaintiff immediately reported the assault to the police. *Id*. at 550. The police arrested the employee, and he later pleaded no-contest to a charge of attempted third-degree criminal sexual conduct. Prior to this incident, the employee did not have a criminal record. *Id*.

The plaintiff sued the defendant under theories of vicarious liability and negligence for failing to prevent the sexual assault. *Id*. The trial court granted the defendant's motion for summary disposition, finding no genuine issue of material fact concerning whether the defendant was liable for the unforeseen criminal acts of its employee. *Id*. On appeal, this Court reversed the trial court's order in a published decision holding that there was a genuine issue of material fact regarding whether the defendant knew or should have known about the perpetrator's criminal sexual propensities. *Brown v Brown*, 270 Mich App 689, 701; 715 NW2d 626 (2006), rev'd by *Brown* 478 Mich at 548. Defendant successfully applied for leave to appeal this Court's decision in our Supreme Court.

The issue before the Supreme Court was "whether an employee's criminal activity is foreseeable by his employer and whether the employer is liable for that criminal activity." *Brown*, 478 Mich at 553. The *Brown* Court stressed the irrational, unpredictable, and arbitrary nature of criminal activity and its effect on considerations of foreseeability and duty. *Id*. at 554. The Supreme Court observed, "Employers generally do not assume their employees are potential criminals, nor should they." *Id*. The *Brown* Court concluded that the defendant's knowledge of its employee's sexually charged words did not create a duty owed by the defendant to the plaintiff, reasoning as follows:

> [A]n employer can assume that its employees will obey our criminal laws. Therefore, it cannot reasonably anticipate that an employee's lewd, tasteless comments are an inevitable prelude to rape if those comments did not clearly and unmistakably threaten particular criminal activity that would have put a reasonable employer on notice of an imminent risk of harm to a specific victim. Comments of a sexual nature do not inexorably lead to criminal sexual conduct

any more than an exasperated, angry comment inexorably results in a violent criminal assault.

* . . .* . . .*

[E]vidence of making unwanted sexual comments is not evidence of a propensity to commit violent rape. It simply cannot be the responsibility of the employer to determine with clairvoyant accuracy whether conduct of one sort might bear some relationship to conduct of a completely different sort. Rather, if an employee has not done or said anything that would afford a reasonable employer notice of a propensity to rape or commit some other type of criminal conduct, there is no sound legal or commonsense basis for the imposition of tort liability on an employer. [*Brown*, 478 Mich at 555, 563.]

Thus, because the employee's rape of the plaintiff was not foreseeable, the defendant had no duty to prevent it. *Id.* at 556 (noting, "the lack of foreseeability of the harm in this case weighs definitively against imposing a duty on defendant").

Although the record evidence clearly supports viable claims of liability against Young— for which he has been defaulted—it does not create a genuine issue of material fact as to whether Young's assault of plaintiffs was foreseeable for the purpose of imposing liability on defendants. Prior to hiring Young, Cogan conducted a criminal background check, contacted Young's prior employer, verified his licensure, and had Young serve a probationary period at different clinics. There is no record evidence that anything discovered in this vetting process alerted Cogan to the foreseeability of a propensity to commit sexual misconduct on Young's part.

Likewise, the record evidence does not support that Cogan was aware of inappropriate conduct or comments by Young, or that Young's comments made foreseeable that he would sexually assault female patients. Cogan testified at his deposition that he received no complaints about Young's treatments, and plaintiffs offer no evidence to refute his testimony. In fact, plaintiffs all admitted at their depositions that they never complained to Cogan or anyone at Health Quest about the treatment they received from Young. Cogan testified that the only complaint he received about Young was of his viewing scantily clad women on his computer, and that he responded by reprimanding Young and restricting his Internet access.

Plaintiffs' contention that Cogan would have learned of Young's activities had he fulfilled his supervisory obligation to review patients' charts is unpersuasive. Plaintiffs speculate that said review would have led to further investigation, which in turn would have led to patient contact, which in turn would have led to actual knowledge of Young's conduct. However, "parties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Libralter Plastics, Inc v Chubb Grp of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Also unpersuasive is the argument plaintiffs advance in their reply brief that, as a supervising chiropractor, Cogan had a non-delegable duty to supervise Young's hands-on delivery of chiropractic treatment. The cases plaintiffs rely upon as authority are inapplicable to the instant case, as they involve physicians who were onsite and directly responsible for overseeing a medical procedure (e.g., an operation) or personnel (e.g., physician's assistant) in

-13-

the performance of a procedure. Cogan did not have a doctor-patient relationship with any of the plaintiffs, he practiced in Farmington Hills, hundreds of miles away from the Munising clinic, and plaintiffs offered no evidence or authority indicating that, as owner of the clinic, Cogan had hands-on supervisory responsibility for the chiropractic procedures that went on there.

Plaintiffs assert for the first time on appeal that the trial court should have imputed the knowledge of the assaulted employee-plaintiffs to Cogan because "[k]nowledge acquired by employees within the scope of their employment is imputed to the corporation." *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 213; 476 NW2d 392 (1991) (quotation marks and citation omitted). The three employee-plaintiffs worked at the clinic as a receptionist, a massage therapist, and an office assistant. None of them was operating "within the scope of her employment" when Young assaulted her during chiropractic treatments. Plaintiffs concede as much in their appellate brief when they admit that they entrusted themselves to Young and "were not capable of making professional chiropractic judgments about the validity of [Young's] diagnosis and treatment." Moreover, whatever knowledge they had acquired within the scope of their employment would not have been imputed to Cogan, but to the corporation for which they worked. Thus, plaintiffs "imputed knowledge" argument does not advance their efforts to impose a duty on Cogan to protect them from Young's assaultive conduct.[5]

Under *Brown*, the fact that Young was a poor record keeper, was viewing pictures of scantily clad women online, and made unprofessional remarks at work about his sex life and

---

[5] Plaintiffs argue in the alternative that Cogan assumed a legal duty when he undertook a background check of Young and when he restricted Young's Internet access. They provide no authority for the proposition that performing a background check on a potential employee is tantamount to assuming a legal duty, regardless of what the check revealed. They base their argument with respect to Cogan's restriction of Young's Internet access on the unsupported assumption that the purpose of the limitation was to "protect female patients and employees." To "protect female patients and employees" does not necessarily mean to protect them from the unforeseeable harm of sexual assault. Plaintiffs provided no evidence to indicate that anyone at the clinic who was aware of Young's viewing habits perceived them as evidence of a propensity to engage in criminal sexual conduct. Elsewhere, plaintiffs contend that Cogan's inadequate response to Young's viewing habits amounted to a "ratification of George Young's assaults on, and inappropriate interaction with, female patients under [defendants'] care." Ratification requires "knowledge of the material facts." See *Hutton v Roberts*, 182 Mich App 153, 162; 451 NW2d 536 (1989). Plaintiffs have offered no evidence establishing a genuine issue of material fact regarding whether Young's Internet activities evinced a propensity to engage in sexual assault, let alone that Cogan was aware of the "material facts" of Young's inappropriate touching of female patients. Because Young engaged in acts of inappropriate touching under the guise of their being legitimate chiropractic treatment maneuvers, it was not until he attempted to kiss one of his patients that any of the patients realized his actions were not performed for legitimate treatment purposes, wherein the information came to light. Cogan immediately suspended Young from seeing patients as soon as he learned that Young had been arrested and charged with assault.

sexual interests did not make it foreseeable that he would engage in criminal sexual conduct with his patients. Plaintiffs offered no evidence establishing a question of material fact as to the appropriateness of Cogan's vetting process or that Young's assaultive behavior was a foreseeable consequence of Cogan's hiring, retention, and supervision of Young. Thus, the trial court did not err by dismissing plaintiffs' claim against Cogan for negligent hiring, retention, and supervision of Young.

## C. RESPONDEAT SUPERIOR

Plaintiffs next contend that the trial court erred in ruling that plaintiffs had failed to establish a genuine issue of material fact in support of any of their claims against defendants, but without specifically addressing their claims that Cogan and Health Quest were vicariously liable for Young's tortious activity under the principles of respondeat superior. We detect no error in the trial court's economy or its ruling.

The general rule under the doctrine of respondeat superior is that "an employer is not liable for the torts intentionally or recklessly committed by an employee when those torts are beyond the scope of the employer's business." *Zsigo*, 475 Mich 215, 221; 716 NW2d 220 (2006). Plaintiffs assert that Young's assaults occurred in the scope of his employment because they occurred while Young was doing what Cogan hired him to do: provide chiropractic diagnoses and treatment, including adjustments. Plaintiffs do not contend that Cogan's assaultive conduct was acceptable chiropractic treatment, or that Cogan hired Young to touch patients sexually. Rather, they contend that defendants provided Young "with the ways and means to enable him to commit his wrongful touching of the Plaintiffs." To the extent that plaintiffs are asserting that Young was somehow aided in his sexual misconduct by the existence of an agency relationship, their argument fails. Our Supreme Court explicitly rejected the aided by the agency exception to an employer's general nonliability under the principles of respondeat superior in *Zsigo*.

In *Zsigo*, the plaintiff sought to hold the defendant medical center vicariously liable for assault, battery, and intentional infliction of emotional distress arising from a sexual assault committed by one of the defendant's nursing assistants. *Zsigo*, 475 Mich at 218-219. The trial court denied the defendant's motion for summary disposition, ruling that there was a question of fact regarding whether the nursing assistant's agency relationship with the defendant aided the nursing assistant in committing the tortious acts against the plaintiff. *Id*. at 219. The matter went to trial. After the plaintiff's case, the defendant moved for a directed verdict, "asserting that defendant could not be liable for the torts of an employee acting outside the scope of his employment." *Id*. The plaintiff relied on *Champion v Nation Wide Security Inc*, 450 Mich 702, 712 n 6; 545 NW2d 596 (1996), overruled in *Hamed v Wayne County*, 490 Mich 1; 803 NW2d 237 (2011), to argue that the defendant "was liable under the 'aided by the agency' relationship exception to respondeat superior liability."[6] *Zsigo*, 475 Mich at 219. The trial court denied the

---

[6] The aided by the agency exception to an employer's general nonliability arises where " 'the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency

defendant's motion, the jury rendered a verdict for the plaintiff, and the trial court entered a judgment on the verdict. *Id*. at 219-220. The defendant appealed in this Court. In an unpublished decision, this Court reversed and remanded the case for entry of a judgment of dismissal on a ground other than that relevant here, *id*. at 220, after which the plaintiff successfully sought leave to appeal in our Supreme Court.

The issue before the Supreme Court was whether Michigan recognizes the aided by agency exception to the doctrine of respondeat superior liability. The Supreme Court clarified that it had not previously adopted the exception, and held that it declined to do so in the case before it. *Id*. at 218. The *Zsigo* Court concluded that the aided by the agency exception would swallow the rule of general nonliability and be tantamount to the imposition of strict liability on employers, explaining as follows:

> Indeed, it is difficult to conceive of an instance when the exception would not apply because an employee, by virtue of his or her employment relationship with the employer is always "aided in accomplishing" the tort. Because the exception is not tied to the scope of employment but, rather, to the existence of the employment relation itself, the exception strays too far from the rule of respondeat superior employer nonliability. [*Id*. at 226.]

Plaintiffs concede that they disagree with the holding in *Zsigo* and attempt to distinguish their case to avoid it. They argue that, whereas the nursing assistant's assaultive conduct far exceeded his assigned task of cleaning the treatment room where the plaintiff was left in restraints, Young's misconduct "was not a gross deviation from the scope of normal medical contact with the patient." Plaintiffs' reliance on factual distinctions between the instant case and *Zsigo* is unavailing. Regardless of the facts elicited to argue that employees were aided by agency relationships to commit torts beyond the scope of their employment, the aided by the agency exception simply is not available to impose liability upon employers otherwise not liable under the doctrine of respondeat superior.[7]

In a supplemental brief, plaintiffs suggest that the mere fact that defendants published what plaintiffs describe as a letter of apology in the newspaper after authorities arrested and charged Young constitutes an acknowledgment that Young was their employee and that they

---

relation.' " *Zsigo v Hurley Med Ctr*, 475 Mich 215, 221; 716 NW2d 220 (2006), quoting 1 Restatement Agency, 2d, § 219(2).

[7] Further, even if Michigan had adopted the exception, there is no record evidence that defendants knew about the assaults, let alone aided Young in committing them. At most, defendants presented Young with the opportunity for his misconduct through employment. See *Salinas v Genesys Health Sys*, 263 Mich App 315, 321; 688 NW2d 112 (2004). "This Court has held that an employee is not aided in accomplishing the tort by the existence of the agency relation, under the Restatement exception, just because of the mere fact that an employee's employment situation may offer an opportunity for tortious activity. *Id*. (quotation marks and citation omitted).

were civilly responsible for his misconduct with patients. In support of their position they rely on this Court's recent decision, *Nielson v Safeguard Properties, LLC*, unpublished opinion per curiam of the Court of Appeals, issued November 9, 2017 (Docket No. 333244). Pursuant to MCR 7.215(C)(1), unpublished opinions "should not be cited for propositions of law for which there is published authority," and if cited, the party "shall explain the reason for citing it and how it is relevant to the issues presented." Plaintiffs argue that the existence of an apology letter in *Nielsen* makes the case and its legal analysis salient in this instance.[8]

The relevant question in *Nielson* was whether defendant Safeguard could be held liable for the acts of independent contractors it hired to enter plaintiff Nielson's home and "secure it." Safeguard worked with mortgage companies to secure properties vacated following a mortgagor's default. Nielson was in default on his mortgage. Although he complied with his bank's written instructions to call and advise whether his home was occupied or vacant—Nielson was still living in the home—workers hired by Safeguard entered Nielsen's home, " 'rummaged through' Nielson's belongings, emptied his refrigerator, helped themselves to some of his personal property, and let his cat out. They also 'winterized' the plumbing and locked him out of the house by attaching lock boxes on his doors." *Nielson*, unpub op at 1. When Neilson returned home and could not get into his house, "his neighbor delivered a door tag that had been left with him. The tag advised that the workers found the home 'vacant' and therefore Safeguard, acting on behalf of Nielson's mortgagee, 'secured' the property and added it to its 'monthly maintenance schedule.' " *Id*. The notice provided a number to call in the event the home became "unsecure" or an emergency arose." *Id*.

When Nielson was finally able to get inside his home, he "found a letter explaining the mortgagee's 'right to inspect [the] property to verify occupancy and to determine whether securing the property is necessary." *Id*. at 2.

The letter advised:

> Based on the initial inspection of the exterior of your home, it was determined that the property was vacant and in need of securing. As a result, the securing process was begun by changing a lock on one door to the home all other locks remain accessible as before. After gaining entry to the property, however, it was determined that the property was occupied. Therefore, no further work was performed, no items were removed and the home was locked.

> The writer "sincerely apologize[d] for this inconvenience" and provided another number to call "so we can make immediate arrangements to rectify the matter." [*Nielson*, unpub op at 2.]

---

[8] "Although unpublished opinions of this Court are not binding precedent, they may be considered instructive or persuasive." *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 137; 892 NW2d 33 (2016).

Nielson filed suit against Safeguard, alleging various statutory and common-law causes of action, including trespass to property, trespass to personal property, and conversion. Prior to the close of discovery, Safeguard moved for summary disposition, arguing with regard to the torts that it "used independent contractors, rather than employees, to secure Nielson's property and could not be held liable for their wrongdoing." *Id*. The trial court agreed and dismissed the tort counts along with the rest of Nielson's complaint.

On appeal, Nielson challenged the trial court's dismissal of his trespass and conversion claims. This Court determined that the trial court erred in dismissing the tort claims and concluded that the record supported imposition of liability on Safeguard under more than one agency theory, reasoning:

> The evidence indicates that the workers did exactly what Safeguard told them to do: enter the home, change the locks, winterize the plumbing, and discard any food in the refrigerator. In this sense, the workers were apparently controlled by Safeguard. The property clearly was occupied rather than vacant; had the workers been able to exercise their own discretion, it seems obvious that they would not have thrown anything away, winterized the plumbing, or changed more than one lock. Further, the door tag prepared by Safeguard states that *Safeguard* was hired by the mortgage company to 'maintain[] the property,' to 'secure' it, and to place it on a 'monthly maintenance schedule': precisely the work that was performed. [*Nielsen*, unpub op at 15.]

The Court also referenced a "sign in sheet" posted in the home by Safeguard for Nielson to track all parties entering the property. The sheet requested notification at a certain telephone number should an emergency be discovered at the property; the telephone number was the same as the one listed on the apology letter Nielson found inside his home. All of the information left by the intruders identified them as Safeguard workers. *Id*. at 16. Under the circumstances presented, the Court concluded that the record evidence plausibly demonstrated that Safeguard directed that workers it hired would enter the home and secure it in the manner dictated by Safeguard. *Id*. at 17.

The instant case is clearly distinguishable from *Nielson*. The letter of apology in *Nielson* was but one piece of evidence among many supporting the imposition of liability under an agency theory where Safeguard had argued that it was not responsible for the torts of the independent contractors. The record evidence in *Nielson* supported a finding that Safeguard ordered the independent contractors to perform the actions that served as the basis for Nielson's tort allegations. Thus, the workers' actions were foreseeable, arguably performed within the scope of their agency relationship, and Safeguard had actual knowledge of them. In the instant case, for reasons already stated, Young's misconduct was not foreseeable and not within the scope of his employment. There is no record evidence that Cogan or Health Quest knew about Young's inappropriate touching of patients until authorities arrested and charged him with assault, and there certainly is no record evidence that Cogan or Health Quest instructed Young to assault patients. Under the facts of this case, the mere existence of a letter of apology by Health

Quest and Cogan, which was not part of the record in the trial court, cannot be a ground for the imposition of liability.[9]

Plaintiffs offered no evidence sufficient to raise a genuine issue of material fact regarding whether Young's assaultive conduct was within the scope of his employment, and their apparent reliance on the aided-by-agency exception to the doctrine of respondent superior is unavailing under Michigan law. Accordingly, the trial court did not err in dismissing plaintiffs' vicarious liability claims against Cogan and Health Quest.

## D. CLAIMS UNDER THE CRA

Plaintiffs also argue that the trial court erred in ruling that plaintiffs had failed to establish a genuine issue of material fact in support of "any of its claims" against defendants, without specifically addressing their public accommodations claims under the CRA. Once again, we find no error.

The CRA protects persons from discrimination in employment and public accommodations. MCL 37.2102(1); *Cotton v Banks*, 310 Mich App 104, 129; 872 NW2d 1 (2011). To establish an employer's liability under the CRA, plaintiffs must satisfy the elements of respondeat superior. *Hamed v Wayne Co*, 490 Mich 1, 10; 803 NW2d 237 (2011); *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993). As our Supreme Court explained in *Hamed*:

> When the harassment was committed by an agent and the plaintiff is pursuing a civil rights claim against the principal, as in this case, a court must always "determine the extent of the employer's vicarious liability . . . ." We require this analysis because the CRA specifically incorporates common-law agency principles. Thus, *if a defendant is not vicariously liable for the acts of its agent under traditional principles of respondeat superior, the plaintiff's claim under the CRA fails as a matter of law.* [*Hamed*, 490 Mich at 10, quoting *Chambers v Trettco, Inc*, 463 Mich 297, 311; 614 NW2d 910 (2000) (emphasis added in *Hamed*).]

---

[9] Plaintiffs sought and received permission to file a supplemental brief regarding *Nielsen* and argued the significance of an apology letter in this case. Defendants filed a timely responsive brief to which they attached the letter at issue. Although defendants did not file a motion to expand the record to include the letter, given the significance plaintiffs attached to it in their supplemental brief as well as at oral argument, we considered it in the context of assessing plaintiffs' claim that it supports the imposition of liability. Contrary to plaintiffs' characterization of the letter as one of "apology," it reads more like the script of an infomercial and pitch for continued business after revelation of Young's conduct than it does as an apology. The letter does not indicate that defendants had previously known of, or upon coming to light, assumed any responsibility for Young's criminal conduct. We also note that issuing a letter of apology or public advisory notice in such circumstances should be viewed as a good thing, and that it may or may not reflect legal accountability by the author.

The CRA claims of the instant plaintiffs fail because, as explained above, they cannot establish defendants' vicarious liability under the principles of respondeat superior. *Hamed*, 490 Mich at 10. Their argument that Young's acts were within the scope of his employment is contrary to *Zsigo* and *Hamed*, which recognized that sexual assaults are outside the scope of an employee's employment unless the employer had notice of the employee's propensity to commit sexual assault. *Id*. at 11; *Zsigo*, 475 Mich at 226-227, 231. As discussed above, plaintiffs presented no evidence establishing a genuine issue of material fact with regard to whether defendants had reason to anticipate Young's criminal acts. Young's background check did not raise any red flags, and, under *Brown*, Young's inappropriate verbal and visual conduct was not sufficient to put defendants on notice of Young's propensity to commit sexual assault. *Brown*, 478 Mich at 447-448. Because plaintiffs cannot establish that defendant were "vicariously liable for the acts of [their] agent under traditional principles of respondeat superior," plaintiffs' claims under the CRA fail as a matter of law. *Hamed*, 490 Mich at 10.

Affirmed.

/s/ Peter D. O'Connell
/s/ Jane M. Beckering
/s/ Cynthia Diane Stephens